AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Gmail Account:<br>TERRYFILER4@GMAIL.COM and/or<br>(832) 995-7256 | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.    1:25-mj-697 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | possession with the intent to distribute and distribution of controlled substances and conspiracy to commit the same; |
| 18 U.S.C. § 1956 | Money Laundering. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MITCHELL BEDA Digitally signed by MITCHELL BEDA
Date: 2025.08.26 10:53:15 -04'00'

*Applicant's signature*

SA Mitchell S. Bedard, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ FaceTime video conference _____ *(specify re*

Date:  **Aug 26, 2025**

Karen L. Litkovitz
**United States Magistrate Judge**

City and state:  Cincinnati, Ohio

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the Google Account listed in the table

below (the "**Target Google Accounts**") that is stored at premises owned, maintained, controlled,

or operated by Google LLC and Google Payment Corporation ("Google"), a company

headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043:

| Account Identifiers | Owner/User | Defined Term |
|---|---|---|
| **Email**: Terryfiler4@gmail.com<br>and/or<br>**Telephone Number**: (832) 995-7256 | Terry FILER | **Target Google Accounts** |

1

## ATTACHMENT B
## Particular Things to be Seized

**I.     Information to be disclosed by Google LLC and Google Payment Corporation (collectively, "Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, is required to disclose to the government for each account or identifier listed in Attachment A:

a.   The contents of all emails associated with the Account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

b.   All business records and subscriber information, in any form kept, pertaining to the Account, including:
1.   Names (including subscriber names, user names, and screen names);
2.   Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
3.   Telephone numbers, including SMS recovery and alternate sign-in numbers;
4.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;
5.   Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers
6.   Length of service (including start date and creation IP) and types of service utilized;
7.   Means and source of payment (including any credit card or bank account number); and
8.   Change history.

c.   Any records pertaining to the user's calendar(s), including Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

2

d. The contents of all text, audio, and video messages associated with the Account, including Chat, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

e. All Location History and Web & App Activity indicating the location at which the Account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

f. All maps data associated with the Account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

g. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

h. All payment and transaction data associated with the Account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

i. A record of the Account's YouTube Watch History, including: accessed URLs and their associated duration, privacy settings, edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier, and change history;

j. All Google/Gmail accounts associated to the above Account by device or cookie, including User ID, subscriber name, cellphone number and email address for such associated accounts;

k. Any accounts sharing the same SMS, secondary, recovery email address, or machine cookie;

3

l.      All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

m.     Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

n.     Any and all data included in Google One phone backups, to include dates the backups occurred, and all data contained therein.

Google is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

4

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence, contraband, instrumentalities, and/or fruits of violations of 21 U.S.C. §§ 841(a)(1) and 846 (possession with the intent to distribute and distribution of controlled substances and conspiracy to commit the same) and 18 U.S.C. § 1956 (money laundering) (collectively, the "Subject Offenses"), those violations involving **Terry FILER** from May 3, 2024 through April 4, 2025, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a.     Any steps taken in furtherance of, or communications related to, the false statement scheme described in the Affidavit;

b.     Items that establish residency, income, and/or employment for all persons who have resided inside the premise, including tax information, vehicle registration and insurance information, financial documents such as bank account statements, letters of credit, pay stubs, deposits, and any peer-to-peer money transfers;

c.     Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d.     Steps taken to avoid capture for the false statement scheme described in the Affidavit;

e.     Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.     The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

g.     The identity of the person(s) who communicated with the Account about matters relating to unauthorized occupancy, income, and financial institution accounts, including records that help reveal their whereabouts.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS DESCRIBED IN ATTACHMENT A | Case No. 1:25-mj-697 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Mitchell S. Bedard, Special Agent with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with the following account that is stored at premises owned, maintained, controlled, or operated by Google LLC and Google Payment Corporation ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California:

| Account Identifiers | Owner/User | Defined Term |
|---|---|---|
| **Email**: Terryfiler4@gmail.com <br> and/or <br> **Telephone Number**: (832) 995-7256 | Terry FILER | **Target Google Accounts** |

As discussed below, the **Target Google Accounts** are linked to a cell phone used by Terry FILER in furtherance of drug trafficking and money laundering in violation of 21 U.S.C. §§ 841(a)(1) and 846 (possession with the intent to distribute and distribution of controlled substances and conspiracy to commit the same) and 18 U.S.C. § 1956 (money laundering) (collectively, the "Subject Offenses"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.	I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since November 2017. Prior to being employed with the DEA, I was employed by Butler County, Ohio as a probation officer for over four years. I graduated from the DEA Basic Agent Academy in May 2018. During the courses of my training, I received instruction in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in multiple criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

3.	I am currently assigned to the Cincinnati Resident Office of the DEA. Prior to my assignment, I received specialized training from the DEA, including the 18-week Basic Agent Training course. Among other things, this training focused on:  methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. Through my training and experience, I am aware that drug traffickers often communicate with their customers, couriers,

2

and/or associates using cellular telephones or use of multiple telephones or other devices, to avoid detection by law enforcement. I also know that those involved in drug trafficking often store in their cell phones and mobile devices contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. The information stored in the contact list or other storage entities within the device may be in the form of a code to conceal the true identity of the contact or information.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the Subject Offenses have been, are being, and will be committed by FILER and/or others. There is also probable cause to believe that FILER is using a cell phone, in furtherance of drug trafficking and money laundering, that is linked to the **Target Google Accounts**; and that information related to those crimes is thus backed up to and will be found on the **Target Google Accounts**. There is probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3

**Jurisdiction**

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A) and 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**Purpose of this Affidavit**

8.      I make this affidavit in support of an application for a search warrant, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), and Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, to search the following Google Accounts:

   a.      Terryfiler4@gmail.com ("**SUBJECT E-MAIL**") - an e-mail address suspected of being used by Terry FILER in furtherance of his drug trafficking operation.

   b.      832-995-7256 ("**SUBJECT PHONE**") – a telephone suspected of being used by Terry FILER in furtherance of his drug trafficking operation.

more fully described in Attachment A (attached hereto and incorporated by reference herein), for evidence, fruits, and instrumentalities of violations of the Controlled Substance Act, specifically, 21 U.S.C. § 846, which are more fully described in Attachment B (attached hereto and incorporated by reference herein). Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 have been committed by Terry FILER and other known and unknown persons. There is also probable cause to search the e-mail accounts described in Attachment A for evidence of these crimes as described in Attachment B. This Court has jurisdiction to issue the requested warrants because it is "a court with jurisdiction over the offense under investigation."  18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).

4

**Summary of Investigation**

9.       The United States, including the Drug Enforcement Administration ("DEA"), is conducting a criminal investigation of Terry FILER and other identified and as-yet unidentified subjects regarding possible violations of the Subject Offenses. I believe, for the reasons below, that FILER uses the United States Postal Service (USPS), among other methods, to facilitate his drug trafficking operation to locations around the United States, including the Cincinnati, OH area. I further believe that FILER uses the **SUBJECT E-MAIL** and **SUBJECT PHONE** in furtherance of his drug trafficking operation.

10.       On September 24, 2024, the Hamilton County Heroin Task Force (HCTF) was contacted by the Blue Ash Police Department (BAPD) about a suspected fatal heroin/fentanyl overdose at the Hampton Inn Blue Ash/Cincinnati Hotel, 4761 Creek Road, Cincinnati, Ohio 45242 (the "Hampton Inn").  At approximately 2:30 AM, HCTF responded to assist with the investigation. Shortly after responding, agents found decedent ▇▇▇▇ of Houston, Texas (the "Decedent"), deceased in the bathroom of the hotel's indoor pool facility.

11.       During the on-scene investigation, agents found a USPS Priority Mail envelope on the counter from Houston, Texas, with residue inside;[1] and a handwritten envelope that was addressed to ▇▇▇▇ 4761 Creek Road, Blue Ash Cincinnati, Ohio 45242" with a return address of ▇▇▇▇, Houston, Texas 77216."  Next to the envelopes was a black, zippered case containing drug paraphernalia and a small baggie of unknown, white powder.  On the Decedent's body, agents found a cellphone in her jacket pocket with telephone number ▇▇▇▇ ▇▇▇▇.

---

[1] The residue from the envelop was later lab-confirmed for both fentanyl and methamphetamine.
[2] Due to the owner being deceased, a search warrant for ▇▇▇▇ was not necessary and it was submitted to the Ohio Narcotics Intelligence Center (ONIC) for analysis.

12. In early October 2024, the ONIC analysis was completed for Decedent's █████ A HCTF analyst reviewed the ONIC analysis and discovered electronic communications, including "Whatsapp" and "TextNow" messages from the Decedent ████████) to a possible narcotics source named "TJ,"[3] using telephone number 832-995-7256 (*i.e.*, the **SUBJECT PHONE**).[4] The following is an excerpt of a text communications between the Decedent ██████ and "TJ" (**SUBJECT PHONE**):

| | | |
|---|---|---|
| Decedent | 9/13/24 at 7:28 AM | Okay I sent $150 if you could send it to ███████ 4761 Creek road Blue Ash/Cincinnati Blue Ash, OH I would appreciate it if you could put it in the mail tomorrow on one day delivery I would greatly appreciate it thank you |
| Decedent | 9/13/24 at 7:28 AM | Whenever you get the code for one day priority mail please send it to me |
| Decedent | 9/13/24 at 7:31 AM | If you can make it 20 and clear the rest in fentanyl and then pay the postage or whatever and they're $40 that should give me like a $30 and her $20 |
| Decedent | 9/13/24 at 7:34 AM | Pay the habit delivered Saturday this Saturday |
| Decedent | 9/15/24 at 6:07 PM | So can you send that money back to me? Or you going to be able to mail it in the morning? I have someone who can and will mail it in the morning if not. I am sick and really need it!! |
| "TJ" (SUBJECT PHONE) | 9/15/24 at 7:59 PM | In the morning |
| Decedent | 9/15/24 at 8:00 PM | Ok please do it!! |
| "TJ" (SUBJECT PHONE) | 9/15/24 at 8:01 PM | Okay [thumbs up emoji] |
| Decedent | 9/16/24 at 12:24 AM | If you can't then it will be too late to mail it to me. We are only here for one more week then we will be going to California. So please try and get it done in the morning. I hate to hear that your |

---

[3] During the on-scene investigation, agents spoke with ████████████, the decedent's paramour. During this conversation, ████████ reported that the decedent was a known drug user and believed that one of her drug sources is someone that goes by "TJ" from Houston, TX.

[4] On October 15, 2024, agents received a subpoena return from AT&T for the **SUBJECT PHONE**, which listed the subscriber as "████████████████████████████████ Throughout the past year, agents have served multiple subpoenas to AT&T for the **SUBJECT PHONE**'s tolls and subscriber information. Based on these subpoena returns, agents observed that the subscriber ████████████ and physical phone (Samsung) remained the same from **May 3, 2024** through **April 4, 2025**. After which, agents observed that the subscriber for the **SUBJECT PHONE** change to "4mydaughters LLC" and the physical phone model change to an iPhone.

6

| | | baby mama has been sick. Hope she gets to feeling better! |

13.     Based on my training and experience and the facts of the investigation, including the text message exchange shown above, I believe that the Decedent was texting her source of supply, "TJ," via the **SUBJECT PHONE**, to coordinate for "TJ" to send her a package of drugs in the mail.  Moreover, through further analysis of Decedent's ███ agents found two email receipt notifications from the "Chime" application (an electronic mobile banking service, which provides peer to peer financial transactions) confirming the following two electronic financial transactions: (1) $150.00 on September 13, 2024, to "Terry F."; and (3) $120.00 on September 20, 2024, to "Terry F."   Based on my training and experience and the facts of the investigation, I believe that these email receipts from Chime were confirmation of payment the Decedent sent to her source-of-supply, "TJ" or "Terry F.," as payment for the drugs sent in the mail.  Later, in November 2024, agents received a subpoena return from Chime, which confirmed that Terry FILER was the active user of the account, with a date of birth of ███ and the **SUBJECT E-MAIL** listed as his contact information.

14.     On October 10, 2024, agents contacted USPS investigators to help track the envelopes found on the Decedent's scene, who advised that the USPS envelope was mailed from the Greens North Post Office in Houston, TX on September 20, 2024. USPS also forwarded agents a screen shot of video surveillance during the time that the specific USPS envelope was mailed:

[5] In October 2024, FILER's prior Parole Officer, PO Anthony Pickers, provided agents with a photocopy of FILER's Official Passport, which showed his DOB listed as ███



15.     As demonstrated above, that screen shot shows a black male, matching the physical description of Terry FILER, handing the USPS envelope to the USPS employee at the front desk to be mailed. (Agents later forwarded that screenshot to FILER's prior parole officer, PO Anthony Pickens, who positively identified the individual as Terry FILER.)

16.     Additionally, through ONIC phone analysis, the collected USPS parcel information, law enforcement databases, and open-source intelligence, agents learned that FILER is associated with the **SUBJECT E-MAIL** and has a current reported address of 7513 Lockwood Drive, Houston, Texas 77016.  Notably, the return address listed on the envelope found at the Decedent's scene (▮▮▮▮▮▮▮, Houston, Texas 77216) is very close to FILER's actual reported address (7513 Lockwood Drive, Houston, Texas 77016).  According to Google Maps, those addresses are approximately 0.9 miles away from each other, and only an approximate 3-minute drive.  Moreover, the house number of "▮▮▮▮▮ is a single digit off from "7513," and ▮▮▮▮▮ ▮▮▮▮▮ is the closest intersecting street to FILER's actual street (Lockwood Drive). Based on my training and experience, I know that drug traffickers often use fabricated return addresses when sending drugs and/or contraband in the mail.  I thus further believe that FILER listed the return

8

address of ███████████, Houston, Texas 77216, which is located near his actual physical residence, when he mailed the envelope to the Decedent to try to avoid law enforcement detection.

17. Accordingly, based on my training and experience and the facts of the investigation, I believe that FILER utilized the **SUBJECT PHONE** and **SUBJECT E-MAIL** when coordinating to send the Decedent drugs in the mail and to receive payment of the resultant drug proceeds related thereto. Based on the information set forth in this affidavit, I believe there is probable cause that FILER and/or his co-conspirators use the **SUBJECT E-MAIL** and **SUBJECT PHONE** in furtherance of their drug trafficking operation in violation of the Subject Offense. Furthermore, based on my training and experience, I know that drug traffickers and money launders often use several different cell phones to avoid law enforcement detection; and that an individual's numerous different cell phones are often all backed up to the same "cloud-based" account (*e.g.* iCloud account for iPhones and Google Account for Androids). I also know that an individual "cloud" account (iCloud and/or Google Account) often has numerous different emails and/or phone numbers associated with that account. And based on my training and experience and the facts of the investigation, I believe that the above identifiers are all associated with the **Target Google Accounts**, which are linked to the **SUBJECT PHONE**. Because FILER is using the **SUBJECT PHONE** in furtherance of drug trafficking and money laundering, as discussed above, I believe that evidence of those crimes are likely backed up to and will be found stored on FILER's **Target Google Accounts**.

## **BACKGROUND CONCERNING GOOGLE**[6]

18. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and

---

[6] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

9

productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

19. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

20. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

21. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

22. Google provides email services, known as Gmail, to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "contact," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them. In my experience stored emails commonly provide evidence of communications between coconspirators, receipts for services (such as cloud-hosting services), and other direct evidence of the crime under investigation.

23. Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar. In my experience, calendar information commonly provides evidence of the crime under investigation because the user may set a calendar reminder to attend certain events that are

10

contrary to the information provided to the government agency. For example, if an individual claims that they have no income but schedules his or her work hours for a particular time in the user's Google Calendar, this would be relevant evidence to the crime under investigation.

24. Google provides several messaging services, including Google Hangouts, Meet, and Chat. These services enable real-time text, voice, and /or vide communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. In my experience, stored messages commonly provide crucial evidence of the crime under investigation, because stored messages commonly reveal communications that contain information contrary to the information provided to the government agency. Google collects and retains data the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.  In my experience, location history commonly helps the government show that relevant internet activity was conducted from the suspect's home or business, helping disprove the argument that the suspect's Google account was compromised and operated by someone else.

25. Google offers a map service called Google Maps, which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it. In this case, evidence from

11

Google Maps is likely to contain evidence of **FILER's** whereabouts, which would help place him at relevant places at relevant times.

26. A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some for regulatory purposes. Information about payments is likely to provide relevant evidence of bank accounts used by **FILER**.

27. Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, likes, comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. Users can also opt into a setting to track their YouTube Watch History. In my training and experience, YouTube data commonly contains relevant evidence for the same reason a user's search history does: because individuals engaged in false statements often make YouTube searches and watch videos with instructions relevant to their crimes or fraudulent intent, such as "Can the police read your emails" or "How to disable location tracking on your phone." In my training and experience, individuals engaged in fraudulent activities commonly believe that if they make such searches on their personal device, the searches are "private".

28. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, he or she can opt to back up all the data from their device to Google Drive.

29. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

12

30.   When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

31.   Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

32.   Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

33.   Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

34.   Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. Downloaded apps might reveal banking institutions used by the target, identifying other accounts that may contain reportable income. In addition, emails,

instant messages, Internet activity, documents, and contact information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

35. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their whereabouts during the use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation.

## CONCLUSION

36. Based on the forgoing, I request that the Court issue the proposed search warrant.

37. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

38. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

14

Respectfully submitted,

MITCHELL BEDA  Digitally signed by MITCHELL BEDARD
Date: 2025.08.26 10:54:09 -04'

Mitchell S. Bedard
Special Agent
Drug Enforcement Administration

Subscribed and sworn to me via FaceTime
on this ___26th___ day of August 2025.

Karen L. Litkovitz
United States Magistrate Judge

15

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the Google Account listed in the table below (the "**Target Google Accounts**") that is stored at premises owned, maintained, controlled, or operated by Google LLC and Google Payment Corporation ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043:

| Account Identifiers | Owner/User | Defined Term |
|---|---|---|
| **Email**: Terryfiler4@gmail.com<br>and/or<br>**Telephone Number**: (832) 995-7256 | Terry FILER | **Target Google Accounts** |

1

**ATTACHMENT B**
**Particular Things to be Seized**

**I.     Information to be disclosed by Google LLC and Google Payment Corporation (collectively, "Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, is required to disclose to the government for each account or identifier listed in Attachment A:

a.     The contents of all emails associated with the Account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

b.     All business records and subscriber information, in any form kept, pertaining to the Account, including:
   1.     Names (including subscriber names, user names, and screen names);
   2.     Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
   3.     Telephone numbers, including SMS recovery and alternate sign-in numbers;
   4.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;
   5.     Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers
   6.     Length of service (including start date and creation IP) and types of service utilized;
   7.     Means and source of payment (including any credit card or bank account number); and
   8.     Change history.

c.     Any records pertaining to the user's calendar(s), including Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

2

d. The contents of all text, audio, and video messages associated with the Account, including Chat, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

e. All Location History and Web & App Activity indicating the location at which the Account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

f. All maps data associated with the Account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

g. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

h. All payment and transaction data associated with the Account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

i. A record of the Account's YouTube Watch History, including: accessed URLs and their associated duration, privacy settings, edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier, and change history;

j. All Google/Gmail accounts associated to the above Account by device or cookie, including User ID, subscriber name, cellphone number and email address for such associated accounts;

k. Any accounts sharing the same SMS, secondary, recovery email address, or machine cookie;

3

l. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

m. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

n. Any and all data included in Google One phone backups, to include dates the backups occurred, and all data contained therein.

Google is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

4

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, contraband, instrumentalities, and/or fruits of violations of 21 U.S.C. §§ 841(a)(1) and 846 (possession with the intent to distribute and distribution of controlled substances and conspiracy to commit the same) and 18 U.S.C. § 1956 (money laundering) (collectively, the "Subject Offenses"), those violations involving **Terry FILER** from May 3, 2024 through April 4, 2025, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Any steps taken in furtherance of, or communications related to, the false statement scheme described in the Affidavit;

b.    Items that establish residency, income, and/or employment for all persons who have resided inside the premise, including tax information, vehicle registration and insurance information, financial documents such as bank account statements, letters of credit, pay stubs, deposits, and any peer-to-peer money transfers;

c.    Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d.    Steps taken to avoid capture for the false statement scheme described in the Affidavit;

e.    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f.    The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

g.    The identity of the person(s) who communicated with the Account about matters relating to unauthorized occupancy, income, and financial institution accounts, including records that help reveal their whereabouts.

5